Mr. Justice Mac Arthur
delivered the opinion of the court.
Mrs. Burche and Mrs. Wallach are sisters, and acquire title to the property in controversy through the will of their father, who died many years ago, leaving a wife to whom he devised a life estate in the property. She also died in the fall of 1872, leaving these two ladies with an absolute title in fee simple. On the 15th day of January, 1872, these two-sisters borrowed $5,000 from Mrs. Kebecca B. Mellen, and they both joined in executing a promissory note to her for that amount, and a deed of trust upon the property to secure its payment. The note was payable in five years, with interest at the rate of 10 per cent, per annum, payable semiannually, and the condition of the deed was that upon *237 default being made in the payment of the interest, or any part of the principal, the property might be sold by the trustee, who was J. C. G. Kennedy, upon an advertisement of ten days, and'the whole amount of the indebtedness would then become due. Default having. been made in the payment of interest, Mrs. Mellen directed the trustee to advertise the premises for sale. Mr. Kennedy thereupon adver-' tised the property for sale, and-, on the 8th of December, 1873, sold' it at public auction, the same being struck off to Mrs. Burche, she being the highest bidder, for $16,509.66 • This would leave a large balance after satisfying the indebtedness and interest and the other liens then existing .upon, the property in the shape of taxes.
Some of the doctrines applicable to trust deeds have been so well established that they may be considered elementa^. The trust deed is assimilated to a mortgage in many respects and the notice advertising the property for sale is analogous to a decree in foreclosure. The effect of a sale in either case and the execution of the deed to the purchaser, is to convey all the right, title, and interest of the grantors in the property to the purchaser, and to cut off their right of redemption forever. They are alike, also, in the consequences of such sale, that the proceeds are to be applied to the satisfaction of the indebtedness, and, if a balance remains, it is to be distributed to the grantors in the trust, deed, according to their interest in the property. The equity of redemption existing in the owners is converted by such sale and represented by th_e balance of the purchase money, after satisfying the security, and the sale becomes a satisfaction of such debt to the amount of the proceeds realized. A distribution to the grantors only takes place in-case of there being a surplus. Had there been a judicial foreclosure in this case — -and it is much to be regretted now' that that course was not pursued — the court would have applied the proceeds as I have already indicated to the full satisfaction of the beneficiary, and afterwards ,to the grantors in the deed, according to the amount of their respective shares .in the balance. .
*238 This rule would apply, also, to a sale after advertisement without judicial process, unless a different course had been agreed upon by all the parties interested; and, should a sale take place for any other purpose than that which I have mentioned, the court would interfere, for the purpose of preventing any deviation from the contract, or from the advertised terms of sale. The trust deed in this case has the following clause, and I believe such a clause is found in all similar instruments. It provides:
“ Upon any and every such default or failure being made in the payment as aforesaid, the said party of the second part [the trustee Kennedy], his successor or successors, shall, at the request in writing of the said Rebecca R. Mellen, or the holder of the note aforesaid, proceed to sell and dispose of said premises as aforedescribed, or so much thereof a3 the said party of the second part, or his successor or successors, may deem necessary, at public sale, to the highest bidder, upon such terms and conditions as he may deem most for the interest of all parties concerned in such sale, first giving at least ten days notice of the time, place, and terms of said sale by advertisement in some newspaper printed and published in the city of Washington.”
Again, that—
“ Out of the proceeds arising from such sale or sales, after paying the proper expenses thereof, and other expenses of this trust, including a commission on the gross amount of said sale or sales of three per centum as compensation to the said trustee, to pay in the first place whatever of said debt, interest, costs, and expenses may be due and unpaid at the time of such sale or sales. Secondly, to pay whatever of said debt, interest, costs and expenses may then remain unpaid, although the same may not then have become due and payable; and, lastly, the surplus, if any, to pay over to the said party of the'first part., their heirs,” &c.
There is also á provision- for the payment of taxes and authorizing the trustee to' pay them, in süch case making the payment a part of the indebtedness secured by the trust deed.
*239 The advertisement upon which the premises were sold states the following terms:
“Terms of sale: $5,000, with interest thereon at the rate of ten per cent, per annum from January 15, 1873, together with the expenses of sale in cash, and the balance at one aq¡d two years, .for which the purchaser is to give his notes, bearing interest at the rate of eight per cent, per annum, and secured by deed of trust on the property sold. Conveyancing at the cost of purchaser. $250 to be paid by the purchaser immediately after sale.”
The sale seems to have taken place in conformity with the advertisement; and certainly, so far as Mrs. Wallach is concerned, no other view of that sale can be entertained. The rights of Mrs. Burche and Mrs. Wallach were determined by the terms of that sale, unless they have made an independent contract which prevents them from insisting upon the rights thus acquired. It is claimed that a contract did exist between Mrs. Burche and Mrs. Mellen, by which Mrs. Burche was to bid in the property, Mrs. Mellen advancing upon a new loan a sufficient amount of money to pay off the taxes upon the property, the interest upon the note, and the expenses of the sale, and to extend the time of paying the original indebtedness, Mrs. Burche agreeing to execute a new note and trust deed as a first lien upon the property.
Undoubtedly a contract to this effect was entered into by Mrs. Burche and Mrs. Mellen. During the argument of the case, the court understood the claim to be • made that Mrs. Wallach was either a party to such contract or that she consented to it and ratified it afterwards. This is a fact that can be determined only by the proofs in the case. I have examined the testimony, which is very voluminous, reading it all through with great care, some portions of it more than once, and I fail to find a single particle of proof that Mrs. Wallach was a party to that agreement, or that she ever consented to the same, or ever ratified it in any way; but, oh the contrary, that constantly from the time of the sale she has insisted upon her right to her share in the balance' of the purchase money- or the deferred payments.
*240 A proposition, it is quite true, was discussed between Mrs. Wallach and Mrs. Mellen, or rather the husband of the lattér, of the same character. But that was an independent conversation, having no connection with the agreement with Mrs. Burche. Mrs. Wallach then declined to enter into such an agreement, unless Mrs. Mellen would advance sufficient, in addition to the taxes and expenses of the sale, to pay Mrs. Burche her share of the purchase money. This was not accepted, however, and afterwards it appears an arrangement was made with Mrs. Burche, who became the purchaser, and, upon receiving from the trustee a conveyance of the property, she executed a trust deed to Mrs. liain, mother of Mrs. Mellen. The amount of this trust was $8,200, and it was taken in Mrs. ITain’s name, for the reason that Mrs. Mellen had not a sufficient amount of her own to make the loan. She therefore borrowed $1,000 from her mother, and took the note and trust deed in her mother’s name, for the purpose of saving the expenses attending a sale of the property, should it become necessary to foreclose for default of payment of the debt or interest thereby created. It appears, however, that Mrs. Mellen had repaid her mother, and is now the holder and the real beneficiary in the trust deed. It is evident that the agreement between the two ladies under which the property was sold cannot affect the rights or interests of Mrs. Wallach, who was no party to it; and under the principles of law already announced, she would be entitled to a moiety of the balance of the purchase money, after the extinguishment of the indebtedness and the satisfaction of the other liens upon the property. This moiety is apparently about $4,400, or a little upwards. No arrangement made subsequently to the sale can affect this interest or deprive her of the benefit to which she was entitled, she never having entered into any arrangement different from the terms advertised, and under which the property was apparently sold. The contract, of course, was binding as between Mrs. Burche and Mrs. Mellen. It is quite true that a creditor may extend such terms and such indulgences as he can agree upon with his debtor; but it cannot be said *241 that such a contract can affect a person standing in the relation to this property that Mrs. Wallach does, without her ■consent.
We, therefore, come to the conclusion that Mrs. Wallach was. entitled to her portion of the surplus and to have it secured as a first lien upon the property, as the payments of such surplus were deferred, and she was entitled to her moiety according to the terms of the advertisement which stated distinctly that such balance was to be at one and two years, for which the purchaser was to give his notes, bearing interest at the rate of eight per cent, per annum and secured by deed ■of trust on the property sold.
Subsequently to all this, the litigation between these parties became somewhat complicated. Mrs. Burche filed a bill in equity against Mrs. Wallach for an account of the rents and profits of this property after the death of her mother, for the reason that she had occupied the premises and was bound to account for the rents and taxes. In this bill she states her agreement with Mrs. Mellen, as I have already set it forth. She does not pretend that Mrs. Wallach was a party to that agreement, but admits that her apparent ■share in the balance is over $4,400; and the only relief she ■asks in the bill, is the account of the rents and profits as already stated. Mrs. Wallach filed a cross bill, and also an original bill, the object of the latter being to set aside the sale for various alleged irregularities. The relief was'denied, and the sale was confirmed. She, therefore, stands upon that sale and her rights under it.
During this litigation the property was sold under an order of the court. There does not appear to have been any supplementary pleadings or formal application leading to this sale. It was, however, by the mutual consent of all the parties that it took place, and in the interest of the property itself, which, during litigation, was exposed to dilapidation and decay. The parties, therefore, concurred in the advisability of selling the propei’ty and bringing the proceeds into court, to be distributed to the parties entitled to them, *242 without prejudice to any of tbe pre-existing rights and equities.
From these considerations it follows that the decree below must be reversed, and a final decree entered in the cause, giving priority in the distribution to Mrs. Wallach, the basis of such a decree to be the decree of the court below of January 3,1880, and schedules A, B, C, of the auditor’s report of October 29, 1879. From those documents I think the counsel, without any further reference to the auditor, can intelligently state the amount-' to be awarded in this final decree.